[No. 3104-2.   Division Two.   February 6, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY L. RAGAN, *Appellant.*

*Buzzard & O'Connell* and *Steven R. Buzzard*, for appellant.

*Jeremy Randolph, Prosecuting Attorney*, for respondent.

SOULE, J.—Defendant appeals from convictions on two counts of sodomy and one count of assault in the second degree. He asserts error in the denial of a motion for mistrial, in the admission of a statement made by the victim to a witness, and in the determination that defendant was a habitual criminal. We affirm.

An information was filed April 21, 1977, but the events which formed the basis of the charges occurred in October 1974. The victim, a male who was 16 years old at the time, apparently did not make complaint to the authorities nor

talk to them in any way about the matter until some time in 1977.

The original venue was in Lewis County, but the matter was transferred to Pacific County because of publicity surrounding another trial of the defendant in which he was convicted of the felony–murder of a victim named Kim. (Lewis County No. CR 77–4881.) The record of the questioning of the jury panel leads to the conclusion that the jurors ultimately selected to serve on the Pacific County case had heard neither of the prior conviction in Lewis County nor the events surrounding it. It is appropriate to note that counsel on appeal did not try this case.

## MISTRIAL

After the jury was selected, an oral order in limine was entered at defendant's request. Defendant claims this order was violated. The written motion upon which the order is based has not been made part of the record. From the report of the proceedings, we gather that the portion of the order which is alleged to have been violated relates to the exclusion of evidence pertaining to prior acts of misconduct of the defendant which did not amount to crimes. In the colloquy preceding the oral ruling, defense counsel specifically asked for protection from a witness testifying that the defendant is a "queer." The court ruled:

> Well, we can, perhaps, we can rule on it as it comes up. Defense's motion will be granted as to the last item with the exception, of course, if it is part of the actual occurrence of the crime, something that is directly connected with it. I can conceive the testimony might be admissible, but only in that context. I would ask Mr. Randolph if you would advise your witnesses of the Court's rulings on this matter so that we can be careful.

From the foregoing, it is evident that the limits of the court order are not precise. When the prosecuting witness took the stand, defense counsel developed the fact, upon cross–examination, that the witness had made no report of the affair to his parents or to the police. His lack of complaint to the police was adverted to three times. Upon

redirect examination, the witness explained that the defendant had threatened to kill him if he spoke to the police. He said that he was reluctant to speak to his parents about the matter and then the following transpired:

Q. Besides Penfield and Brian Kelly, Nicki Belmont—now Nicki Land—did you tell anybody else?
A. No, not until here just before they came and talked to me.
Q. Who is they? The police?
A. Yes.
Q. Was that just the last week or so?
A. Yes. *After I had heard about what he had done to the kid—*

(Italics ours.) Clearly, the italicized language was not directly responsive. At this point, and without first asking for the jury to be excused, a motion for mistrial was made. The jury was immediately excused while the motion was argued.[1] The court then denied the motion for mistrial and instructed the jury that the last answer was to be stricken, and to disregard it. They were further instructed to attach no significance to the fact that they were asked to leave the room while the motion was argued.

▮ The denial of the motion for mistrial was proper. In *State v. Johnson,* 60 Wn.2d 21, 29, 371 P.2d 611 (1962), the following test was established:

Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?

We conclude as did the trial court, that the remark did not deprive the defendant of a fair trial. Following the considerations suggested in *State v. Johnson, supra,* we note the following:

a. The question asked was proper. The failure of the witness to complain promptly to the authorities had been put

---

[1]The prosecuting attorney, with commendable candor, advised the court that the reporter had not heard accurately and that the witness had said "Kim" rather than "kid."

in issue by cross-examination and the prosecutor was entitled to fix the time when the complaint was made.

b. The single word "yes" was properly responsive. The unresponsive part was not elicited by the prosecutor.

c. The unresponsive part was an uncalled-for explanation by the witness, but his reason for volunteering it was understandable in view of the preceding cross-examination.

d. Misconduct of counsel was not involved.

e. Prompt objection was made. Defense counsel's election to make it in the presence of the jury was his choice.

f. The court immediately dismissed the jury while argument was conducted.

g. Upon return of the jury, the court immediately instructed the jury to disregard the answer.

h. Unlike in *Johnson,* the defendant thereafter took the stand, denied his guilt, and in so doing, subjected himself to cross-examination concerning his conviction for the murder of "Kim," as well as convictions for kidnapping, burglary and unlawful taking of a motor vehicle.

■ When instructed to disregard certain testimony, we presume that the jury has followed the court's instructions. *State v. Cunningham,* 51 Wn.2d 502, 319 P.2d 847 (1958). Particularly is this true when the matter is handled as discreetly and promptly as was done in this case. The stricken testimony was in and of itself cryptic, and its import could be known only to counsel, the trial judge, and the principals involved in the case. There is no evidence that its significance was clear to the jury. In no way does the clarity and impact of the remark approach that involved in *State v. Suleski,* 67 Wn.2d 45, 406 P.2d 613 (1965). Moreover, when the defendant thereafter took the stand, he thereby subjected himself to cross-examination on the subject of his involvement with "Kim." As in *State v. Duree,* 52 Wn.2d 324, 324 P.2d 1074 (1958), we are satisfied from the record that he took the stand for the purpose of denying his guilt and not because of the remark of the witness.

Defendant argues that he was prejudiced because the judge did not promptly rule on the motion but heard argument before he instructed the jurors and that they thus had time to reflect on the significance of the remark. He argues that because of this delay the criterion of *State v. Johnson, supra,* that the court rule promptly, was not met. Defendant cites no authority for this argument and we find it to be without merit. Given the realities of trial, the judge ruled as promptly as he could. He was entitled to the benefit of argument made in the absence of the jury before he made his ruling.

### EVIDENCE OF EARLY COMPLAINT

Defendant urges that it was error to permit the witness Penfield to testify concerning a statement which was made approximately an hour after the act. Over timely objection, the following testimony was admitted:

Q. When Richard came out and you've described to the jury what he looked like and how he was acting physically, did he say anything to you concerning the events that had just occurred?
A. Yes, he did.
Q. Now, using courtroom–type terminology, tell the jury what he said.
A. He said he had been raped by a man.
Q. Did he use a term—do you know what anal intercourse means?
A. Yes.
Q. Did he use a term that would refer to that type of act?
A. Yes.
Q. A slang term?
A. Yes.

A number of Washington cases recognize the admissibility of testimony to the effect that the victim made early complaint so long as details are not related. *State v. King,* 58 Wn.2d 77, 360 P.2d 757 (1961); *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Smith,* 3 Wn.2d 543, 101 P.2d 298 (1940); *State v. Dixon,* 143 Wash. 262,

255 P. 109 (1927); *State v. Hunter,* 18 Wash. 670, 52 P. 247 (1898).

Details are not admissible unless they are qualified under the res gestae (excited utterance) exception to the hearsay rule. *State v. King, supra. See also State v. Bloomstrom,* 12 Wn. App. 416, 529 P.2d 1124 (1974); *State v. Canida,* 4 Wn. App. 275, 480 P.2d 800 (1971).

Defendant urges that the circumstances of the statement are such that they do not qualify as an excited utterance under the test of *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939). Our decision is not based upon the excited utterance exception.

The testimony previously set forth concerning the complaint made contains no detail beyond that necessary to identify the nature of the act complained of, the bare complaint of rape. Under such circumstances and the authorities previously noted, it is not necessary to meet the *Beck* criteria.

5 R. Meisenholder, Wash. Prac. § 545, p. 504 (1965) classifies this type of evidence as a miscellaneous exception to the hearsay rule and states the rule to be "[t]he testimony may only include the fact and general nature of the crime. The details and particulars of the out–of–court complaint, including the name of the guilty party, are inadmissible hearsay." Penfield's testimony did no more than allude to the fact and general nature of the crime.

Defendant complains that the evidence was admitted in the State's case in chief before the prosecuting witness' credibility had been attacked, and that it was not proper rebuttal at that stage of the trial.

The record discloses that the prosecuting witness had already testified, and the cross–examination concerning lack of complaint to his parents and the police clearly cast a cloud upon his credibility.[2]

---

[2]Inasmuch as the testimony was offered to prove the fact of the complaint rather than the truth of its contents, it might be argued that the testimony was

■ It is not necessary to reserve such evidence until rebuttal and the authorities cited do not so restrict its use. The reason for admitting it in the case in chief in sex crimes is clearly set forth in 4 J. Wigmore, *Evidence* § 1135, at 298–300 (rev. ed. J. Chadbourn 1972):

Thus, the *failure of the woman,* at the time of an alleged *rape,* to *make any complaint* could be offered in evidence (as all concede) as a virtual self–contradiction discrediting her present testimony.

(b) So, where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue upon that assumption. As a *peculiarity,* therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was *not silent,* i.e., that *a complaint was in fact made.*

This apparently irregular process of negativing evidence not yet formally introduced by the opponent is regular enough in reality, because the impression upon the tribunal would otherwise be there as if the opponent had really offered evidence of the woman's silence. Thus the essence of the process consists in the showing that the woman did *not* in fact behave with a silence inconsistent with her present story.

(Footnotes omitted. Some italics ours.)

We hold that there was no error in admitting Penfield's testimony. It was proper to forestall the negative inference which otherwise would be properly drawn had the jury not known of the early complaint.

### HABITUAL CRIMINAL PROCEEDINGS

Defendant urges that the habitual criminal statute, RCW 9.92.090, unlawfully delegates legislative authority because it lacks guidelines and allows arbitrary application by the prosecuting attorney.

■ The statute has heretofore been held to be constitutional insofar as it delegates discretion to the prosecuting

---

not hearsay at all. *See Moen v. Chestnut,* 9 Wn.2d 93, 108, 113 P.2d 1030 (1941). *See also* Washington Rules of Evidence § 801(c).

attorney. *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976), *appeal dismissed*, 432 U.S. 901, 53 L. Ed. 2d 1074, 97 S. Ct. 2943 (1977); *State v. Carlyle*, 19 Wn. App. 450, 576 P.2d 408 (1978); *State v. Brezillac*, 19 Wn. App. 11, 573 P.2d 1343 (1978); *State v. Williams*, 9 Wn. App. 622, 513 P.2d 854 (1973).

Insofar as equal protection is concerned, the only limitation on the exercise of that discretion is that it may not be arbitrary, capricious, or based upon constitutionally invidious standards. *State v. Malone*, 20 Wn. App. 712, 582 P.2d 883 (1978); *cf. State v. Workman*, 90 Wn.2d 443, 456, 584 P.2d 382 (1978).

The record in this case is barren of evidence of discriminatory' application and the defendant has no ground for complaint. *State v. Edwards*, 17 Wn. App. 355, 563 P.2d 212 (1977). Indeed, the record reveals that the standard applied by the Prosecuting Attorney for Lewis County is simply the accumulation of three prior felony convictions. The fact that other prosecuting attorneys may apply different standards is immaterial. Territorial uniformity within a state is not a constitutional requirement. *State v. Malone, supra.*

Defendant also urges that because he had already been sentenced as a habitual criminal under Lewis County No. CR 77–4881 that the habitual criminal proceedings in the case before us were superfluous because, once established, the status of a habitual criminal remains fixed absent an executive pardon. *State v. Ogle*, 3 Wn. App. 549, 475 P.2d 913 (1970).

■ Notwithstanding the fact that in *Ogle* the court considered the second proceeding superfluous, it found no error in the bringing of the second petition. Also, we note that in *Ogle*, the first determination of the habitual criminal status was in 1959 and the time for undermining it by appeal had long since passed when the second proceeding was commenced in 1969. In the case before us, the determination in the Lewis County matter was less than 2 months old. It clearly was subject to the vagaries of appellate review and

the appeal, if successful, would have relieved a dangerous felon of his well–earned enhanced penalty. Under the circumstances, the prosecuting attorney was thoroughly justified in attempting to protect the public by securing a second and independent determination of the habitual criminal status and in that context, the proceedings were not superfluous. Defendant's contention that such a second determination is invidious because it tends to inhibit his right to appeal the Lewis County cause is without merit. We note further that the prosecutor did not attempt to "load it on" by seeking consecutive terms. Rather, he recommended that they be served concurrently. *Cf. State v. Ogden*, 21 Wn. App. 44, 584 P.2d 957 (1978), where the life sentences were made consecutive.

We hold that RCW 9.92.090 does not unconstitutionally delegate legislative authority to the prosecuting attorney; that the prosecuting attorney did not unconstitutionally discriminate in seeking to apply the statute to the defendant, and that in the context of the last two convictions, the second proceeding was not superfluous.

The judgment of conviction and the sentencing as a habitual criminal are affirmed.

REED, A.C.J., and PETRIE, J., concur.

Reconsideration denied March 1, 1979.

Review denied by Supreme Court June 15, 1979.