[No. 4201–II.   Division Two.   September 11, 1981.]

The State of Washington, *Respondent,* v. Christy Ross, *Appellant.*

*Douglas W. Tufts* of *Pierce County Department of Assigned Counsel,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, C.J.—Defendant Christy Ross appeals from a judgment that she is a habitual criminal. We remand for resentencing.

Christy Ross pleaded guilty to a forgery charge in Pierce County on April 9, 1979. The charge was based on defendant's act of writing several checks on the account of another, totaling approximately $800. The defendant was subsequently charged with being a habitual criminal because of six prior felony convictions. These convictions, all guilty pleas, included:

1. Forgery first degree conviction, in King County Supe-

rior Court, November 5, 1971 (No. 58333);

2. Grand larceny conviction (three counts) in King County, February 13, 1973 (No. 63088);

3. Forgery first degree conviction in King County, April 29, 1975 (No. 71222);

4. Grand larceny conviction in Pierce County Superior Court, June 5, 1975 (No. 46783);

5. Forgery first degree conviction in King County, December 17, 1975 (No. 55418); and

6. Escape first degree conviction in Pierce County, March 25, 1977 (No. 51146).

Defendant raises multiple issues on appeal, several of which relate to the sufficiency of the State's evidence to prove her prior convictions. Defendant argues that the copies of the King County convictions are not properly authenticated under RCW 5.44.010 and/or CR 44,[1] because the clerk's certification is by facsimile rather than by actual signature. This contention is not well taken.

■ ER 901, which took effect April 2, 1979 and was therefore applicable to these proceedings, provides in part:

---

[1]RCW 5.44.010 provides:

"Court records, admissible when. The records and proceedings of any court of the United States, or any state or territory, shall be admissible in evidence in all cases in this state when duly authenticated by the attestation of the clerk, prothonotary or other officer having charge of the records of such court, with the seal of such court annexed."

CR 44(a)(1), (2)(c) provides in pertinent part:

"Authentication.

"(1) *Domestic.* An official record kept within the United States, or any state, . . . or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office or official custody of the seal of the political subdivision and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office or the seal of the political subdivision.

"(2) *Foreign.* . . .

" . . .

"(c) **Other Proof.** This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law."

REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION

(a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Additionally, ER 902 provides in part:

SELF-AUTHENTICATION

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(a) **Domestic Public Documents Under Seal.** A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

. . .

(d) **Certified Copies of Public Records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with section (a), (b), or (c) of this rule or complying with any law of the United States or of this state.

The rules of evidence (ER) do not supersede statutes and other rules defining methods of authentication; they serve to provide an alternative means of authentication. *See* Comments, ER 901, 902; *see also State v. Hodge,* 11 Wn. App. 323, 523 P.2d 953 (1974) (RCW 5.44.040 not superseded by CR 44).

■ The certificates in the instant case bear what purports to be the official seal of the King County Superior Court, as well as what purports to be the actual signature of a superior court judge, attesting to both the office and signature of the clerk custodian. In these circumstances we hold that, under ER 901(a) the documents provide suffi-

cient evidence to support the trial judge's determination of authenticity. The instruments also qualify as self-authenticating under ER 902(d). A signature may be written by hand, by stamp or even by typewriter, Black's Law Dictionary 1553 (4th ed. 1968); *see Seattle v. Sage*, 11 Wn. App. 481, 523 P.2d 942 (1974); *McGrady v. Munsey Trust Co.*, 32 A.2d 106 (D.C. 1943); *Costilla Estates Dev. Co. v. Mascarenas*, 33 N.M. 356, 267 P. 74 (1927); *Tenement House Dep't v. Weil*, 76 Misc. 273, 134 N.Y.S. 1062 (1912). In the absence of other evidence suggesting the invalidity of the certification process or questioning the authenticity of these court records, the King County Superior Court documents were properly admitted into evidence by the trial court.

A second question raised by defendant relates to the use of a prior felony conviction which may not have been a felony at the time of the habitual criminal trial. Specifically, defendant argues that the conviction of grand larceny in 1973 in King County was not a felony at time of trial in 1979. Each of the grand larceny counts involved checks worth less than $250, which only would amount to gross misdemeanors in 1979. *See* RCW 9A.56.060. Defendant relies on *State v. Jackovick*, 56 Wn.2d 915, 355 P.2d 976 (1960), wherein the court stated that the crimes under consideration there were

> both—and were at the time when the appellant was convicted of those offenses—felonies in the state of Washington.

*Jackovick*, 56 Wn.2d at 919.

■ Both Divisions One and Three of this court have held that the prior convictions used in habitual criminal proceedings must only have been felonies at the time of perpetration. *State v. Castillo*, 23 Wn. App. 519, 596 P.2d 312 (1979); *State v. Braxton*, 20 Wn. App. 489, 580 P.2d 1116 (1978). The *Castillo* court interpreted the language in *Jackovick* to be a statement of the facts in that case rather than a holding that prior felonies used to support habitual criminal charges must be felonies in Washington at the time of the habitual criminal proceeding as well as at the

time the prior convictions were committed. We concur with the *Castillo* court's interpretation of *Jackovick.*

■ Defendant questions the use of the December 1975 King County conviction for first degree forgery because the sentencing did not occur until December 1975 upon a plea which was entered in December of 1970. Apparently defendant did not appeal from the 1975 sentence. Consequently, defendant's attack on the validity of this prior conviction is collateral and cannot be made in this appeal of her habitual criminal conviction. In any event, defendant's claim appears to be wholly specious and less than candid; she does not tell us why the lapse in time occurred nor does she offer any explanation. We will assume this is because the 1975 sentence was imposed upon a finding she had violated the probation granted her in 1970.

> In the absence of anything in the record to the contrary, an appellate court must assume that any delay in sentencing was for a lawful purpose in the orderly process of handling a case. Passage of time alone does not bar imposition of sentence or require a defendant's discharge.

*State v. Kelly,* 20 Wn. App. 705, 709, 582 P.2d 891 (1978), quoting 2 C. Wright & A. Miller, *Federal Practice* § 521 (1969).

■ Defendant raises several arguments which go to the constitutionality of applying the habitual criminal charge to her. She claims that the decision by the Pierce County prosecutor to seek habitual criminal status was an abuse of discretion, a denial of the equal protection of the laws and constitutes cruel and unusual punishment. We do not agree. The filing of a habitual criminal charge is within the discretion of the prosecuting attorney, *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976); *State v. Ragan,* 22 Wn. App. 591, 593 P.2d 815 (1979), who may consider a wide range of factors in determining whether to file the charge. *State v. Rowe,* 93 Wn.2d 277, 609 P.2d 1348 (1980). Of course, equal protection requires that the prosecutorial discretion not be exercised in an arbitrary or capricious man-

ner, or be based upon constitutionally invidious standards. *State v. Ragan, supra.*

The deputy prosecutor in this case delayed filing the charge until after defense counsel was afforded the opportunity to present a packet of material on recommended alternative treatment prospects for defendant. The deputy prosecutor read the packet but decided to proceed with the charge after he and the senior deputy in charge of such matters discussed relevant criteria. These criteria included defendant's record of six prior felonies, her previous incarceration in state prison, the subsequent chances for rehabilitation, and her repeated pattern of criminal activity. All of these criteria are well within the guidelines recognized in case law. *State v. Rowe, supra.* Further, there is no evidence that the prosecutor exercised his discretion in an arbitrary or capricious manner, or that the decision to file charges was based on Ms. Ross' race, sex, creed or religion. *See State v. Malone,* 20 Wn. App. 712, 582 P.2d 883 (1978). The prosecutor believed he had six underlying felonies which showed a repeated pattern of criminal behavior, coupled with a disinclination to reform despite opportunities to do so, and decided that prosecution of habitual criminal charges was warranted.

█ Defendant asks us to apply the holding in *State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980) that the imposition of a life sentence for the commission of three nonviolent crimes involving small amounts of property is wholly disproportionate to the nature of the offenses. The use of the habitual criminal conviction in Fain's case was said to constitute cruel punishment in violation of Washington's Const. art. 1, § 14. In defendant's case, she had been convicted of seven prior felonies, ranging in seriousness from forging her name to small checks to large checks, one totaling $3,800, and first degree escape. Her repeated pattern of criminal activity is much greater than was Fain's. Each of the felonies carries a stiff penalty and the imposition of life imprisonment does not appear to be disproportionate.

█ Defendant next challenges the King County judg-

ments because the State failed to prove their validity, *In re Lee,* 95 Wn.2d 357, 623 P.2d 687 (1980), and *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). Accordingly, defendant's habitual criminal finding and the sentence based thereon is vacated and the matter is remanded to the trial court. The State will have the opportunity of proving the validity (voluntariness) of the pleas underlying the prior convictions, *State v. Holsworth, supra.* Because the pleas in question antedate the effective date (September 1976) of the decision in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976), evidence extrinsic to the record may be considered.[2]

It is so ordered.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied October 9, 1981.

Review denied by Supreme Court January 22, 1982.

---

[2]We are not unaware that, ordinarily the two unchallenged Pierce County convictions would be sufficient basis for adjudging defendant a habitual criminal. Because of our treatment of the issues of prosecutorial discretion and cruel punishment, however, we deem it appropriate that the validity of the King County convictions (pleas) be determined.