[No. 54767-4-I.   Division One.   August 22, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. N.M.K., *Appellant.*

*Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Carla B. Carlstrom* and *Catherine M. McDowall, Deputies*, for respondent.

¶1 Cox, C.J. — Where the admissibility of testimonial evidence is at issue, the sixth amendment to the United

States Constitution demands that the witness be unavailable at trial and that the accused had a prior opportunity to cross-examine the witness.[1] While the full scope of what is included within "testimonial" evidence is not fully defined by the United States Supreme Court, that Court made clear that business records are generally not testimonial evidence.[2] In this case, the trial court admitted into evidence a certified letter from the Department of Licensing (DOL) stating that no driver's license had been issued to N.M.K. under the absence of a public record exception to hearsay.[3] Because admission of the document under this exception is consistent with the rationale cited in *Crawford*[4] and there was no other error, we affirm.

¶2 In September 2003, Rodger Miller, a resident of Jewell Street in Enumclaw, Washington observed N.M.K. driving a black Honda over a sidewalk and the front lawn of a home on Jewell Street. Minutes later, another Jewell Street resident, Rocky Johnson, also saw N.M.K. driving at a high rate of speed around Jewell Street.

¶3 Miller and Johnson reported the incident to police, and an officer arrived at the scene to interview them. After the interviews, Officer Osterdahl located a black Honda that matched the description given to the interviewing officer by Miller and Johnson parked at a nearby McDonald's. Officer Osterdahl parked behind the Honda, leaving a way for the car to exit. Two young men were

---

[1] *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[2] *Crawford*, 541 U.S. at 56.

[3] ER 803(a)(10) states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
   (10) *Absence of Public Record or Entry.* To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

[4] *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

standing next to the vehicle, N.M.K. was in the passenger seat, and another young man was in the backseat.

¶4 Officer Osterdahl asked the two people in the vehicle if they would step out of the vehicle. They did. The officer advised them of the complaints by Miller and Johnson. Officer Osterdahl asked each for his legal name and date of birth. N.M.K. stated his full name and date of birth. He also admitted that he did not have a driver's license and had been driving the Honda on Jewell Street. Officer Osterdahl arrested him.

¶5 The State charged N.M.K. with reckless driving and driving without a valid operator's license. During the fact-finding hearing, the juvenile court held a CrR 3.5 hearing to determine the admissibility of N.M.K.'s statements to Officer Osterdahl prior to arrest. The court determined N.M.K.'s statements were admissible.

¶6 Also in the CrR 3.5 hearing, the State offered a certification from the DOL, indicating that there was no record of a driver's license for N.M.K. The defense objected, claiming the certification was hearsay. The court overruled the objection and the certification was admitted under ER 803(a)(10), the absence of a public record exception.

¶7 Thereafter, the court found N.M.K. guilty of driving without a valid operator's license and reckless driving. The juvenile court entered a disposition order that imposed a sentence of six months of community supervision and 21 hours of community service.

¶8 N.M.K. appeals the adjudication of guilt for driving without a valid operator's license.

## PRE-ARREST STATEMENTS

### *Seizure*

¶9 N.M.K. first argues that he was illegally seized by Officer Osterdahl because the officer did not have reasonable suspicion to stop and ask him, as a passenger in the car, to identify himself. According to N.M.K., because the

seizure was not valid, the admissions that followed must be suppressed. We hold there was no seizure at that point in the encounter between the two. Thus, suppression of the statements was not required on this ground.

¶10 N.M.K. relies on *State v. Rankin*,[5] contending that the officer's request for identification violated article I, section 7 of the Washington Constitution that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."[6] In *Rankin*, passengers were stopped, searched, and found with drugs. There, the officer requested and retained identification or driver's licenses from the passengers. The court pointed out that the police officers had no independent basis for requesting identification from the passengers in each case and that requesting and holding the passengers' identification constituted a seizure.[7] The evidence obtained post-seizure was ruled inadmissible.[8]

¶11 However, " 'not every encounter between a police officer and a citizen is an intrusion requiring an objective justification.' "[9] Under article I, section 7, passengers are unconstitutionally detained when an officer requests identification " 'unless other circumstances give the police independent cause to question [the] passengers.' "[10]

¶12 Here, other circumstances gave Officer Osterdahl independent cause to ask N.M.K. to identify himself. Officer Osterdahl knew that a black Honda had been seen speeding on Jewell Street. N.M.K. was seated in a car that matched the description of the car involved in the reckless driving incident. The car was parked in a parking lot near Jewell

---

[5] 151 Wn.2d 689, 695, 92 P.3d 202 (2004).

[6] WASH. CONST. art. I, § 7.

[7] *Rankin*, 151 Wn.2d at 699.

[8] *Rankin*, 151 Wn.2d at 699.

[9] *Rankin*, 151 Wn.2d at 695 (quoting *United States v. Mendenhall*, 446 U.S. 544 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

[10] *Rankin*, 151 Wn.2d at 695 (alteration in original) (quoting *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980)).

Street. No one was in the driver's seat of the parked car. Officer Osterdahl stopped, but did not place N.M.K. and the other three men in custody while he investigated the incident. Officer Osterdahl had a reasonable, articulable suspicion to ask N.M.K. to identify himself.

¶13 Because there was an independent cause to question N.M.K., his state constitutional rights were not violated when Officer Osterdahl asked him to identify himself.

### Custodial Interrogation

¶14 N.M.K. also appears to argue that his statements to Officer Osterdahl should have been suppressed because he was not read his *Miranda* rights before being questioned. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We disagree.

¶15 In order to trigger *Miranda* protections, "[a] suspect must be in custody or 'otherwise deprived of his freedom of action in a significant way . . . .' "[11] The question is not whether a reasonable person would believe that he was free to leave but rather whether he would believe that " 'he was in police custody of the degree associated with formal arrest.' "[12] This determination is made by objectively looking at the actions of the law enforcement officer.[13] Incriminating statements and admissions that are not in response to an officer's questions are "freely admissible."[14]

¶16 Here, it is clear that N.M.K. was not seized. Nothing in the words or actions of Officer Osterdahl indicated that N.M.K. was in custody. He did not handcuff N.M.K., nor did he tell him he could not leave the scene. There was no arrest until after the confession. In short, *Miranda* warnings were

---

[11] *State v. Mahoney* , 80 Wn. App. 495, 496, 909 P.2d 949 (1996) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed 2d 694 (1966)).

[12] *State v. Ferguson*, 76 Wn. App. 560, 566, 886 P.2d 1164 (1995) (quoting 1 WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.6, at 105 (Supp. 1991)).

[13] *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998).

[14] *State v. McWatters*, 63 Wn. App. 911, 915, 822 P.2d 787 (1992).

not required as N.M.K.'s freedom of action was not curtailed to a degree associated with formal arrest.

## CONFRONTATION CLAUSE

### *Authenticity*

¶17 N.M.K. first argues that the certified copy of the absence of a driver's license is inadmissible under *Crawford* because the State failed to establish witness unavailability and there was no evidence that the records custodian had been cross-examined about the record before the hearing. We hold that the document was not testimonial and thus unavailability of the witness was irrelevant.

¶18 Extrinsic evidence of the authenticity of a certified copy of a public record is not required as a condition precedent to admissibility.[15] Such documents are considered self-authenticating.[16] Because the document offered into evidence here bears the official seal of the DOL and is attested to by the custodian of records, the document is self-authenticating and did not require unavailability or cross-examination of the custodian.[17]

### *Hearsay Exception*

¶19 N.M.K. next argues that the certified copy of the statement from the DOL that no operator's license

---

[15] ER 902(d); *see State v. Chapman*, 98 Wn. App. 888, 891, 991 P.2d 126 (2000) (certified copy of driving record held self-authenticating; live foundation testimony unnecessary).

[16] ER 902.

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . .

**(d) Certified Copies of Public Records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with section (a), (b), or (c) of this rule or complying with any applicable law, treaty or convention of the United States, or [of this state].

[17] *See State v. Ross*, 30 Wn. App. 324, 327, 634 P.2d 887 (1981).

existed for N.M.K. was improperly admitted under the rules of evidence. We disagree.

¶20 The absence of a public record has traditionally been admitted under an exception to the rule against hearsay as stated in ER 803(a)(10). The comments to ER 803(a)(10) state, "Rule 803(a)(10) defines a hearsay exception [ ] for evidence of a lack of public record or entry, offered to prove the absence of data or the nonoccurrence or nonexistence of a matter of which a public record is regularly made and preserved. The rule parallels the hearsay exception for a lack of a business record [Rule 803(a)(7)]."[18] This latter rule "allows the admission of evidence that an event or matter was *not* recorded to show that it did not occur or did not exist. The rule is a logical extension of the business records statute."[19]

¶21 Here, the copy of the certified statement from the DOL was properly admitted under ER 803(a)(10) and ER 803(a)(7).

### Testimonial Evidence

¶22 N.M.K. principally argues that the admission of a certified copy from the DOL stating that no license had been issued to him was testimonial and violated his Sixth Amendment right to confrontation as established by *Crawford.*[20] We disagree.

¶23 Where the admissibility of testimonial evidence is at issue, the Sixth Amendment requires that the witness be unavailable at trial and that the accused had a prior opportunity to cross-examine the witness.[21] The United

---

[18] 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, 409-10 (2005).

[19] TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, at 406.

[20] 541 U.S. 36.

[21] *Crawford*, 541 U.S. at 68.

States Supreme Court did not define the full scope of what it considers to be "testimonial" evidence. But the Court made clear that business records are not testimonial evidence.[22]

¶24 Here, the certified copy declared "that after a diligent search of computer files there is no document or other evidence . . . to indicate that . . . the [DOL] had issued a valid license to" N.M.K. We have heard no persuasive argument that this document is anything other than one that falls squarely within the absence of a public record exception to hearsay that ER 803(a)(10) describes. Such an exception parallels the absence of a business record exception that ER 803(a)(7) describes. The express language of *Crawford* states that "business records" are not testimonial. But we see no reason in law or logic why the absence of a business or public record should be treated differently. In short, we conclude that such a record is the functional equivalent of a business record for purposes of the confrontation clause.

¶25 Recently, in *United States v. Rueda-Rivera*,[23] the Fifth Circuit came to a similar conclusion. The court there held that a Certificate of Non-Existence of Record (CNR) was properly admitted into evidence to establish that the government had not consented to the defendant's presence in the country.[24] In *Rueda-Rivera*'s case, a records custodian at the Immigration and Naturalization Service (INS) created the CNR, stating that " 'after a diligent search no evidence [was] found to exist in the records of the [INS] of the granting of permission for admission into the United

---

[22] *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, *business records* or statements in furtherance of a conspiracy.") (emphasis added); *Crawford*, 541 U.S. at 76 (the court's analysis of "testimony" excludes at least some hearsay exceptions, such as *business records and official records*) (Rehnquist, C.J, concurring in judgment).

[23] 396 F.3d 678 (5th Cir. 2005).

[24] *Rueda-Rivera*, 396 F.3d at 680.

States after deportation . . . .' "[25] The court in *Rueda-Rivera*, likened the INS record to a business record, stating the CNR "does not fall into the specific categories of testimonial statements referred to in *Crawford.*"[26] The court declined to extend *Crawford* and concluded that the contents of the defendant's immigration file were business records and, thus, not testimonial.[27]

¶26 In a statement of additional authority, N.M.K. cites a New York State Criminal Court case, *People v. Niene*,[28] for the proposition that an affidavit submitted by a police officer that is used to prove the absence of a record is testimonial. This argument is not persuasive.

¶27 First, a decision from a trial court in another state is of questionable precedential value either in that state or this one. Moreover, we are not bound by the decisions of even the highest court of another state.[29] Second, *Niene* analyzes an affidavit submitted by a police officer, not a records custodian. More importantly, the case does not consider any of the evidentiary rules that are before us now.[30] Thus, we do not view that case as helpful.

¶28 We affirm the disposition order.

KENNEDY and ELLINGTON, JJ., concur.

Review granted at 157 Wn.2d 1001 (2006).

---

[25] *Rueda-Rivera*, 396 F.3d at 679 (first alteration in original).

[26] *Rueda-Rivera*, 396 F.3d at 680.

[27] *Rueda-Rivera*, 396 F.3d at 680.

[28] 8 Misc. 3d 649, 798 N.Y.S.2d 891 (2005).

[29] *See State v. Wadsworth*, 139 Wn.2d 724, 740, 991 P.2d 80 (2000) (other states' supreme court cases are of no precedential value to Washington courts).

[30] *Niene*, 8 Misc. 3d 649 (examined whether a police officer's affidavit of an absence of a license was testimonial).