[No. 77719-5.   En Banc.]
Argued October 17, 2006.     Decided July 12, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. NATHAN MICHAEL KIRKPATRICK, *Petitioner*.

874

*Dana M. Lind* (of *Nielsen, Broman & Koch, PLLC*), for petitioner.

*Daniel T. Satterberg, Interim Prosecuting Attorney*, and *Carla B. Carlstrom, Catherine M. McDowall*, and *James M. Whisman, Deputies*, for respondent.

*Robert M. McKenna, Attorney General*, and *Jerald R. Anderson, Senior Counsel*, on behalf of Washington State, amicus curiae.

¶1 J.M. Johnson, J. — The Sixth Amendment to the United States Constitution provides defendant the right "to be confronted with the witnesses against him . . . ."[1] Under this "Confrontation Clause," testimonial evidence may not be admitted at trial absent proof of the declarant's unavailability and prior opportunity for cross-examination of the declarant by the accused.[2] Not all evidence is testimonial, of course, but the United States Supreme Court has not provided a comprehensive definition of "testimonial" in this context.[3] However, the Court's express recognition that business records are not "testimonial" provides a basis for concluding that public records, as well as certifications of the absence thereof, are also not testimonial evidence. Accordingly, we agree with Division One of the Court of Appeals that Mr. Kirkpatrick's rights under the Confrontation Clause were not violated when the trial court below admitted a Department of Licensing (DOL) certification as to his lack of a driver's license.[4] Because we also decline to reach the merits of Kirkpatrick's claim under the Washington Constitution (article I, section 7), we affirm the Court of Appeals decision upholding Kirkpatrick's convictions for

---

[1] U.S. Const. amend. VI.

[2] *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[3] *Id.*; *see also Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

[4] *See State v. N.M.K.*, 129 Wn. App. 155, 163-64, 118 P.3d 368 (2005), *review granted sub nom. State v. Kirkpatrick*, 157 Wn.2d 1001, 136 P.3d 758 (2006).

reckless driving and operating a motor vehicle without a valid operator's license (NVOL).[5]

FACTS

¶2 On September 8, 2003, Mr. Rocky Johnson observed a black Honda "traveling in excessive speeds" on Jewell Street in Enumclaw, Washington. Clerk's Papers (CP) at 6. As the Honda drove past his home, Johnson called out to the driver. The car stopped about 50 yards past Johnson's residence, allowing Johnson to approach the vehicle and observe the driver. Later that day, and again at trial, Johnson identified Kirkpatrick as the driver. Another resident, Mr. Rodger Miller, also observed the black Honda "driving across a neighbor's lawn and the sidewalk . . . in front of it" on September 8, 2003. CP at 22, 111-12.

¶3 After speaking with witnesses, including Johnson and Miller, Enumclaw police officer Doug Osterdahl located the suspect Honda at a nearby McDonald's and parked his patrol car behind, but not blocking, the vehicle. Approaching the vehicle on foot, Officer Osterdahl observed Kirkpatrick in the front passenger seat. There was another young man in the rear, right passenger seat, as well as two young men standing outside the vehicle. Officer Osterdahl asked all four men for their names and birthdates, but none of the men were placed under arrest at this time. After obtaining their names and birthdates, Officer Osterdahl asked the young men some questions about the incident observed by Johnson and Miller. No *Miranda*[6] warnings were provided at this time. Kirkpatrick admitted to Officer Osterdahl that he had driven the Honda on Jewell Street and that he did not have a driver's license. Kirkpatrick was

---

[5] Kirkpatrick challenges his reckless driving conviction on the grounds that he was illegally seized by Officer Osterdahl and thus his confession to this offense should have been suppressed. The Court of Appeals determined that suppression was not required and affirmed Kirkpatrick's conviction. *N.M.K.*, 129 Wn. App. at 158-59. Our decision not to review Kirkpatrick's seizure claim functions as an affirmance of the Court of Appeals decision to uphold Kirkpatrick's conviction.

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

subsequently arrested and charged with reckless driving and NVOL.

¶4 A hearing was held by the trial court pursuant to CrR 3.5 to determine the admissibility of Kirkpatrick's statements to Officer Osterdahl given the lack of *Miranda* warnings. The trial court determined that no *Miranda* warnings were required and, thus, the statements need not be suppressed. No unlawful seizure claim was raised at this time.

¶5 During trial, the State offered into evidence a certification from DOL attesting that Kirkpatrick did not have a license as of September 8, 2003. Kirkpatrick's counsel objected on hearsay grounds. The trial court found that the document was admissible pursuant to ER 803(a)(10)[7] and ER 902(d).[8] Ultimately, the court found Kirkpatrick guilty of reckless driving and NVOL.

¶6 Kirkpatrick timely appealed to Division One of the Court of Appeals, raising claims of unlawful seizure under article I, section 7 and violation of his rights under the

---

[7] ER 803(a)(10) provides:

(a) **Specific Exceptions**. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(10) *Absence of Public Record or Entry*. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

[8] ER 902(d) provides:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . .

(d) **Certified Copies of Public Records**. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with section (a), (b), or (c) of this rule or complying with any applicable law, treaty or convention of the United States, or the applicable law of a state or territory of the United States.

federal Confrontation Clause. *State v. N.M.K.,* 129 Wn. App. 155, 158-59, 118 P.3d 368 (2005), *review granted sub nom. State v. Kirkpatrick,* 157 Wn.2d 1001, 136 P.3d 758 (2006). Although Kirkpatrick had not raised an unlawful seizure claim at trial, the Court of Appeals reached the merits of his claim without performing a threshold RAP 2.5(a) analysis. The Court of Appeals concluded that "there was no seizure" when Kirkpatrick was contacted by Officer Osterdahl and, accordingly, suppression of Kirkpatrick's statements was not required on these grounds. *Id.* at 159. The Court of Appeals also found no Confrontation Clause violation. *Id.* at 163-64. Kirkpatrick next filed a petition for review with this court, raising both his unlawful seizure and Confrontation Clause claims. His petition was granted. *State v. Kirkpatrick,* 157 Wn.2d 1001, 136 P.3d 758 (2006).

ANALYSIS

## I. Constitutional Issues Raised for the First Time on Appeal

■ ¶7 Under RAP 2.5(a), a party may not raise a claim of error on appeal that was not raised at trial unless the claim involves (1) trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, or (3) manifest error affecting a constitutional right. Specifically regarding RAP 2.5(a)(3), this court has indicated that "[c]onstitutional errors are treated specially because they often result in serious injustice to the accused." *State v. Scott,* 110 Wn.2d 682, 686, 757 P.2d 492 (1988). However, this court has also stated that "the constitutional error exception is not intended to afford criminal defendants a means for obtaining new trials whenever they can 'identify a constitutional issue not litigated below.'" *Id.* at 687 (quoting *State v. Valladares,* 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part,* 99 Wn.2d 663, 664 P.2d 508 (1983)).

■ ¶8 Whether RAP 2.5(a)(3) should allow the new argument on appeal is determined after a two-part analysis. *State v. Lynn,* 67 Wn. App. 339, 345, 835 P.2d 251

(1992). First, the court determines whether the alleged error is truly constitutional. *Lynn*, 67 Wn. App. at 345. Second, the court determines whether the alleged error is "manifest," i.e., whether the error had "practical and identifiable consequences in the trial of the case." *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001); *Lynn*, 67 Wn. App. at 345. A purely formalistic error is insufficient to justify appellate consideration of a belated claim. *Lynn*, 67 Wn. App. at 345.

## A. Kirkpatrick's motion to strike State's RAP 2.5 argument is denied

■ ¶9 Just prior to oral argument before this court, Kirkpatrick moved to strike a portion of the State's supplemental brief which asked this court to decline to reach the merits of Kirkpatrick's article I, section 7 claim in accordance with RAP 2.5(a). The State did not address the applicability of RAP 2.5(a) in an answer to Kirkpatrick's petition for review or in its brief submitted to the Court of Appeals. However, because Kirkpatrick himself raised the same issue in his petition here,[9] it was appropriate for the State to address this issue in its supplemental brief. Therefore, Kirkpatrick's motion to strike is denied.[10]

## B. Kirkpatrick's unlawful seizure claim was not properly preserved at trial

¶10 At trial, Kirkpatrick's counsel contended that Kirkpatrick's statements to Officer Osterdahl should be excluded due to lack of *Miranda* warnings, not that Kirkpatrick was improperly seized. A suppression hearing was held, and the

---

[9] Pet. for Review at 2 n.2.

[10] Even if this court were to grant Kirkpatrick's motion, the outcome in this case would not change because this court's authority to decline to address a claim under RAP 2.5(a) may be raised sua sponte. RAP 12.1(b); *see also State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999) ("While ordinarily we will decide a case only on the basis of issues raised in the petition for review and the answer, RAP 13.7(b), this court has the authority to determine whether a matter is properly before the court, to perform those acts which are proper to secure fair and orderly review, and to waive the rules of appellate procedure when necessary to 'serve the ends of justice.' " (quoting RAP 1.2(c))).

trial court found that, under the circumstances, no *Miranda* warnings were required. No findings were requested or made regarding whether Kirkpatrick was improperly seized under article I, section 7. Yet, it is this latter issue which Kirkpatrick now asks this court to review.

¶11 This court declines to reach the merits of Kirkpatrick's unlawful seizure claim. While Kirkpatrick's claim is constitutional in nature, any alleged error in admitting his statements cannot be deemed manifest here. The record is insufficient to determine any practical consequences of the admission of his statements on the outcome of Kirkpatrick's trial given other, unchallenged evidence of his guilt. Moreover, Kirkpatrick's claim calls for a fact-specific analysis, which this court is ill equipped to perform given the lack of trial court fact-findings. This court will not reach the merits of Kirkpatrick's belated article I, section 7 claim.

## II. Confrontation Clause Violation

¶12 The Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This right is made binding on the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). An alleged violation of the Confrontation Clause is subject to de novo review. *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999).

¶13 The admission of hearsay where the witness is unavailable to testify often raises the specter of a Confrontation Clause violation. *State v. Monson*, 113 Wn.2d 833, 840, 784 P.2d 485 (1989) (citing *State v. Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982)). As an initial matter, hearsay is inadmissible unless it comes within an exemption or exception established by statute or common law. In Washington, RCW 5.44.040 provides one exception to the hearsay rule for "[c]opies of all records and documents on record or

on file in the offices of the various departments of the United States and of this state . . . when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals . . . ."[11] However, the existence of an applicable hearsay exception is not dispositive as to the issue of admissibility at trial. Rather, the Confrontation Clause requires another layer of analysis. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *see also Davis v. Washington*, 547 U.S. 813, 821-22, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

¶14 This second layer of analysis, articulated by the United States Supreme Court in *Crawford*, 541 U.S. at 68, may be summarized as follows: If the hearsay evidence is "testimonial," the proponent must show that the declarant is unavailable and that the accused had a prior opportunity to cross-examine the declarant. If the hearsay evidence is not "testimonial," then such a showing is not required. *Id.* at 53-54, 68; *Davis*, 547 U.S. at 821. The Supreme Court has not provided a comprehensive definition of "testimonial." *Crawford*, 541 U.S. at 68; *Davis*, 547 U.S. at 822. However, the Court did state in *Crawford* that business records are "by their nature . . . not testimonial." 541 U.S. at 56; *see also id.* at 76 (Rehnquist, C.J., concurring in judgment) (noting that the majority also excluded business records and official records from its definition of testimonial evidence).

¶15 The United States Supreme Court has not directly addressed the testimonial versus nontestimonial nature of public, as opposed to business, records. However, several circuit courts of appeal have done so and concluded that

---

[11] Additionally, to be admissible in Washington, a public record must meet the requirements set forth in *Steel v. Johnson*, 9 Wn.2d 347, 358, 115 P.2d 145 (1941): "a report or document prepared by a public official must contain facts and not conclusions involving the exercise of judgment or discretion or the expression of opinion. The subject matter must relate to facts which are of a public nature, it must be retained for the benefit of the public and there must be express statutory authority to compile the report."

such official records are not testimonial.[12] A number of state courts have come to the same conclusion, upholding the admission of various official records.[13] In *Davis*, 547 U.S. at 825, the United States Supreme Court indicated its concurrence with this conclusion by citing to *Dowdell v. United States*, 221 U.S. 325, 31 S. Ct. 590, 55 L. Ed. 753 (1911) as one proper example of the testimonial versus nontestimonial distinction. In that case, the court determined that facts from official records regarding the conduct of a prior trial certified by the judge, court clerk, and official reporter were not statements of "witnesses" under the Confrontation Clause. *Dowdell*, 221 U.S. at 330-31.

---

[12] *See United States v. Garcia*, 452 F.3d 36, 42 (1st Cir. 2006) (warrants of deportation not testimonial hearsay); *United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir.) (per curiam) (same), *cert. denied*, 127 S. Ct. 265 (2006); *United States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir. 2006) (memorandum of oral decision issued by immigration judge at deportation hearing not testimonial); *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (same), *cert. denied*, 547 U.S. 1056 (2006); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (records of prior convictions not testimonial), *cert. denied*, 547 U.S. 1114 (2006); *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005) (warrants of deportation not testimonial hearsay), *cert. denied*, 547 U.S. 1034 (2006).

[13] *See People v. Saffold*, 127 Cal. App. 4th 979, 26 Cal. Rptr. 3d 190, 193 (2005) (proof of service of domestic relations restraining order not testimonial); *People v. Shreck*, 107 P.3d 1048, 1060-61 (Colo. Ct. App. 2004) (affidavits used to establish chain of custody for documents not testimonial); *Jarrell v. State*, 852 N.E.2d 1022, 1026 (Ind. Ct. App. 2006) (certification of breath test instrument not testimonial); *Commonwealth v. Walther*, 189 S.W.3d 570, 575 (Ky. 2006) (same); *State v. Carter*, 2005 MT 87, 326 Mont. 427, 114 P.3d 1001, 1007 (same); *State v. Forte*, 360 N.C. 427, 629 S.E.2d 137, 144 (laboratory report on chain of custody of DNA (deoxyribonucleic acid) material and DNA analysis not testimonial), *cert. denied*, 127 S. Ct. 557 (2006); *State v. Dedman*, 2004-NMSC-37, 136 N.M. 56, 102 P.3d 628, 636 (report showing defendant's blood alcohol level not testimonial); *State v. Norman*, 203 Or. App. 1, 125 P.3d 15, 20 (2005) (same), *review denied*, 340 Or. 308 (2006); *Denoso v. State*, 156 S.W.3d 166, 182 (Tex. App. 2005) (certified copy of autopsy report not testimonial); *Anderson v. Commonwealth*, 48 Va. App. 704, 634 S.E.2d 372, 377 (2006) (certificate used by state to establish chain of custody not testimonial). *But see Shiver v. State*, 900 So. 2d 615, 618 (Fla. Dist. Ct. App. 2005) (portions of affidavit of breath test testimonial); *City of Las Vegas v. Walsh*, 121 Nev. 899, 124 P.3d 203, 207-08 (2005) (affidavits of nurses on blood draws testimonial), *cert. denied*, 547 U.S. 1071 (2006); *People v. Pacer*, 6 N.Y.3d 504, 847 N.E.2d 1149, 1153-54, 814 N.Y.S.2d 575 (2006) (affidavit of regularity/proof of mailing of notice of suspension of driving privileges testimonial); *State v. Smith*, 2006-Ohio-1661, 2006 Ohio App. LEXIS 1555, at *7 (unpublished opinion) (laboratory report submitted to establish identity and weight of substance in drug prosecution testimonial).

¶16 The United States Supreme Court also has yet to decide whether a certification as to the absence of a public record is testimonial evidence. Nationwide, courts have reached disparate conclusions on this point. *Compare United States v. Cervantes-Flores*, 421 F.3d 825, 834 (9th Cir. 2005) (certificate of nonexistence of record is nontestimonial), *cert. denied*, 547 U.S. 1114 (2006), *with People v. Niene*, 8 Misc. 3d 649, 798 N.Y.S.2d 891, 894 (Crim. Ct. 2005) (consumer affairs officer's affidavit of absence of vendor's license is testimonial). The present case requires this court to determine whether a DOL certification as to the absence of a driver's license is testimonial for purposes of the *Crawford* analysis. We hold that neither certification of DOL drivers' records nor certifications as to the absence of such records are testimonial for purposes of *Crawford*.

## III. Certification of the Absence of DOL Driver's Record Is Not Testimonial Evidence for Purposes of the *Crawford* Analysis

¶17 In addressing this issue below, Division One found the "absence-of-a-public-record" exception to the hearsay rule (ER 803(a)(10)) determinative of the character of the DOL certification admitted at Kirkpatrick's trial. First, the Court of Appeals reasoned that, since business records are nontestimonial, public records are likewise nontestimonial. *N.M.K.*, 129 Wn. App. at 163. Then, the Court of Appeals concluded that there was "no reason in law or logic why the absence of a business or public record should be treated differently." *Id.* This analysis is similar to that used by the Court of Appeals for the Ninth Circuit in *Cervantes-Flores*, 421 F.3d at 832, and the Court of Appeals for the Fifth Circuit in *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (per curiam).

¶18 Part of the *Crawford* Court's rationale for deeming business records not testimonial appears to argue against the conclusion that the public record at issue here may be treated analogously. In *Crawford*, the Court suggested that business records are nontestimonial in part because they are not prepared with an eye toward trial. 541 U.S. at

51-52. In contrast, the public record here, at least the certification, was literally prepared for purposes of litigation and was intended to be relied upon by the State. Likewise, the DOL certification here was probably not kept in the normal course of DOL business. However, a more in-depth analysis of the function served by public records like those at issue suggests that such documents are appropriately analogized to business records and, accordingly, are not testimonial. As the Ninth Circuit explained, in reference to a certification of the absence of an immigration-related record:

> It is true that Jones' certificate was prepared for litigation, one of the circumstances that *Crawford* emphasized as a concern of the Sixth Amendment. However, the document her certification addresses is part of a class of documents that were not prepared for litigation. Adopting the concerns of the common law, the Court in *Crawford* based its distinction between testimonial and nontestimonial evidence in part on skepticism of government officers preparing evidence against a defendant.
>
> . . . .
>
> Cervantes contends that the CNR [certificate of nonexistence of record] is just such a document—prepared by an INS [Immigration and Naturalization Service] official at the request of a federal prosecutor for use in the prosecution against the defendant—but Cervantes mischaracterizes the CNR.
>
> The CNR certifies the nonexistence of a record within a class of records that themselves existed prior to the litigation, much like business records. Thus, had the Attorney General in fact denied Cervantes' application for consent, a government official would have prepared—for trial—a certification that the denial (which could be submitted in evidence as an extant document) was indeed an official record. Conversely, the CNR states that no such preexisting public record, which would have been created and kept in the ordinary course of the INS's regular course of operations, can be found in those official records.

*Cervantes-Flores*, 421 F.3d at 832-33 (citation omitted).

¶19 The document at issue in *Cervantes-Flores* contained language comparable to that found in the DOL

record at issue in the present case: " 'I, *Ruth E. Jones*, certify . . . [t]hat after a diligent search no evidence is found to exist in the records of the Immigration and Naturalization Service of the granting of permission for admission into the United States after deportation of exclusion relating to . . . Roberto Cervantes-Flores.' " *Id.* at 831 (last alteration in original); *see also Rueda-Rivera*, 396 F.3d at 679-80. The Ninth Circuit concluded that this type of public record was nontestimonial evidence. *Cervantes-Flores*, 421 F.3d at 831. We reach the same conclusion regarding a certification of the absence of a DOL driver's record.

¶20 Washington courts have long recognized the inherent reliability and admissibility of driving records from DOL. In *Monson*, 113 Wn.2d 833, this court upheld the admission of a certified copy of a driver's record as a public record. Likewise, in *State v. Chapman*, 98 Wn. App. 888, 891, 991 P.2d 126 (2000), Division Two stated that "[a] driving record is a ' "classic example of a public record kept pursuant to statute, for the benefit of the public and available for public inspection," ' " and that such a document "contains neither expressions of opinion nor conclusions requiring the exercise of discretion" (quoting *State v. Monson*, 53 Wn. App. 854, 858, 771 P.2d 359, *aff'd*, 113 Wn.2d 833 (1989), *quoted in State v. Connie J.C.*, 86 Wn. App. 453, 456-57, 937 P.2d 1116 (1997)). The admissibility of DOL records was impliedly reaffirmed post-*Crawford* by this court's decision in *State v. Gaddy*, 152 Wn.2d 64, 93 P.3d 872 (2004). *See also State v. Smith*, 122 Wn. App. 699, 94 P.3d 1014 (2004), *rev'd on other grounds*, 155 Wn.2d 496, 120 P.3d 559 (2005). We agree with the Court of Appeals that there is no legal or logical basis for treating a document certifying the absence of a driver's record differently than the documents at issue in the above cases. *N.M.K.*, 129 Wn. App. at 163.

¶21 Kirkpatrick contends that Division One's reliance on cases such as *Monson*, *Chapman*, *Gaddy*, and *Smith* is misplaced. He suggests that the documents at issue in

those cases were true driving records, while the document at issue in his case is not a driving record but rather a statement of opinion regarding the existence thereof. This is a distinction without a difference for purposes of *Crawford*. The document at issue in the present case is indistinguishable from the documents at issue in *Monson*, *Chapman*, *Gaddy*, and *Smith* in terms of their being prepared by DOL records custodians for trial purposes. The documents were produced according to the same process, based on identical requests from the relevant prosecutorial authorities. It just happens that in *Monson*, *Chapman*, *Gaddy*, and *Smith*, the records searches conducted by DOL revealed that the defendants did have drivers' licenses, while the search in Kirkpatrick's case revealed that he did not have a license. It is illogical that the admissibility of such documents should turn on the content thereof when that content includes only verifiable facts, adduced by a government official in the regular course of his or her duties according to a standardized procedure. *See Gaddy*, 152 Wn.2d at 73 (noting that "DOL is governed by extensive statutes and provisions and the Washington Administrative Code, which establishes its reliability" and that "[t]here are many statutes in place that mandate DOL to maintain current and accurate information"); *see also United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005) (holding a warrant of deportation admissible because it is "no different than a birth certificate or any other public record which constitutes the routine cataloguing of an unambiguous factual matter"), *cert. denied*, 547 U.S. 1056 (2006). In short, certification that a license has not been issued to a particular defendant is not an accusatory statement or testimony; it is not testimonial evidence. *See Crawford*, 541 U.S. at 51 (explaining that proper focus of the Confrontation Clause is on "'witnesses' against the accused . . . those who 'bear testimony' . . . [a]n accuser" (quoting 2 NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828))).

¶22 In addition, to require cross-examination regarding a certification such as the one here is not only unnecessary

under the law but also impractical in light of the underlying purpose of the Confrontation Clause. As the Ninth Circuit noted in *United States v. Weiland*, "requiring the records custodians and other officials from the various states and municipalities to make themselves available for cross-examination in the countless criminal cases heard each day in our country would present a serious logistical challenge 'without any apparent gain in the truth-seeking process.' " 420 F.3d 1062, 1077 (9th Cir. 2005) (citing *Crawford*, 541 U.S. at 76 (Rehnquist, C.J., concurring in the judgment)), *cert. denied*, 547 U.S. 1114 (2006).

¶23 While it is undoubtedly true that the protections of the Sixth Amendment should not turn on practicality, the conclusion that cross-examination of DOL employees will not advance the truth-seeking process goes to the heart of the constitutional issue before this court. As explained by Chief Justice Rehnquist in his concurring opinion in *Crawford*, "cross-examination is a tool used to flesh out the truth, not an empty procedure. '[I]n a given instance [cross-examination may] be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.' " 541 U.S. at 74-75 (alterations in original) (citations omitted) (quoting 5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1420, at 251 (James H. Chadbourn rev. ed. 1974)). Specifically regarding certifications from DOL, this court concluded in *Monson*:

> Rather than providing constitutionally better testimony, the custodian of records, the signer of the letter of revocation, and the person certifying the mailing of that letter could add nothing to the substantive evidence in the certified copy of the driving record. The better evidence is thus not live testimony.

113 Wn.2d at 844; *see also State v. Hines*, 87 Wn. App. 98, 101, 941 P.2d 9 (1997) ("It is also unrealistic to expect that those who generate these records, or record custodians, would recall the details of a particular transaction or event.").

¶24 Because the certification of the absence of a DOL driver's record is not testimonial evidence, the Sixth Amendment does not require the proponent of such a certification to establish that the declarant is unavailable or that the accused had a prior opportunity to cross-examine the declarant. Requiring cross-examination of the custodians of DOL records, like the one at issue here, would not further the underlying purpose of the Confrontation Clause. Therefore, the trial court did not err in admitting the DOL certification at Kirkpatrick's trial. Accordingly, we affirm the Court of Appeals decision.[14]

CONCLUSION

¶25 This court declines to reach the merits of Kirkpatrick's unlawful seizure claim as untimely raised. Therefore, his conviction for reckless driving is affirmed. We do reach Kirkpatrick's properly raised *Crawford* claim and hold that the admission of a DOL certification regarding Kirkpatrick's lack of a driver's license did not violate his rights. Such a certification of DOL records showing nonexistence of a license is not testimonial evidence under the *Crawford* analysis. Accordingly, we affirm the Court of Appeals decision upholding Kirkpatrick's conviction for NVOL.

C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIR-HURST, JJ., concur.

¶26 ALEXANDER, C.J. (concurring) — There is a critical difference between certifying the existence of a public record and certifying the nonexistence of a public record. The latter certification is prepared for trial, and instead of

---

[14] Even if we were to reach the opposite conclusion regarding the DOL record at issue here, our ultimate decision to affirm Kirkpatrick's conviction for NVOL would likely remain unchanged as there is other, conclusive evidence of his guilt present in the record. Specifically, the record indicates that Kirkpatrick was only 15 years old at the time of this incident and thus not eligible to possess a license. *See* RCW 46.20.031. This evidence suggests that admission of the DOL document, if erroneous, would be harmless error.

certifying contents of a record, it serves as a vehicle to introduce facts not contained within the public records themselves. For this reason, certifications such as the one at issue here are testimonial, implicating the confrontation clause of the Sixth Amendment.[15] However, in this case, admission of the certification that Nathan Kirkpatrick did not have a driver's license was an error that was harmless. Thus, I concur in the result reached by the majority.

¶27 The confrontation clause bars admission of "testimonial" hearsay evidence unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The United States Supreme Court has declined to provide a definition for the term "testimonial," but it has offered some guidance as to which hearsay statements are testimonial. Business records, for example, are not testimonial. *Id.* at 56. The high court has also implied that certified public records are not testimonial. *See id.* at 76 (Rehnquist, C.J., concurring) (stating that the majority would find "official records" nontestimonial); *Davis v. Washington*, 547 U.S. 813, 825, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (citing with approval a case concluding certified "facts regarding conduct of [a] prior trial" were not testimonial). However, formal statements that are intended to be used to establish a fact at trial are testimonial. *See Crawford*, 541 U.S. at 51; *Davis*, 547 U.S. at 822-23, 826. They are essentially " 'a weaker substitute for live testimony' at trial." *Davis*, 547 U.S. at 828 (quoting *United States v. Inadi*, 475 U.S. 387, 394, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986)). As the majority points out, "[i]n *Crawford*, the [United States Supreme] Court suggested that business records are nontestimonial in part *because they are not prepared with an eye toward trial*." Majority at 884 (emphasis added) (citing *Crawford*, 541 U.S. at 51-52).

¶28 Unlike the case of *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007), in which a record existed that indi-

---

[15] U.S. Const. amend. VI.

cated Kronich's driver's license was suspended, no public record existed prior to this case stating that Kirkpatrick did not have a license. Instead, a Department of Licensing (DOL) employee conducted a search and prepared a certification on this point for trial. The majority concedes that the certification itself "was probably not kept in the normal course of DOL business." Majority at 885. The majority does not consider this a problem, though, because the certification addresses a document that *would* have been created in the regular course of business, had it existed.

¶29 I disagree with the majority. The certification here did not merely relate a fact that existed within records kept pursuant to statute and in the regular course of the DOL's business. Instead, a DOL representative interpreted the inability to locate a record for Kirkpatrick as meaning he did not have a license. Rather than certifying a public record, the DOL representative in essence certified a search. By offering the certification, the State sought to admit the representative's conclusion into evidence to prove an element of the State's case, while insulating that conclusion from cross-examination regarding the search methods used or other possible interpretations of the absence of a record. As such, the certification was certainly a weaker substitute for live testimony and, thus, testimonial. Since the representative who signed the certification was neither unavailable nor previously subject to cross-examination by Kirkpatrick, admission of the certification violated Kirkpatrick's constitutional right to confrontation.

¶30 In addition, contrary to the majority's claim, requiring the DOL representative to testify would further the truth-seeking process toward which the confrontation clause is directed. Allowing Kirkpatrick to cross-examine the representative about his search methods would shed light on the likelihood of error and any possibility that a record actually existed without being found. It would also encourage DOL employees to perform more extensive searches before concluding there is no evidence of a driver's license, thus decreasing the likelihood of a record being overlooked.

¶31 However, this court has previously ruled that violations of the confrontation clause are subject to harmless error analysis. *State v. Davis*, 154 Wn.2d 291, 304, 111 P.3d 844 (2005) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State v. Smith*, 148 Wn.2d 122, 138-39, 59 P.3d 74 (2002)), *aff'd*, 547 U.S. 813 (2006). Confrontation clause error is harmless beyond a reasonable doubt where untainted evidence is also admitted and "the untainted evidence admitted is so overwhelming as to necessarily lead to a finding of guilt." *Id.* at 305 (citing *Smith*, 148 Wn.2d at 139 (citing *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985))).

¶32 Here, Kirkpatrick admitted to an Enumclaw police officer that he did not have a driver's license. In addition, as the majority notes, the record indicates that Kirkpatrick was 15 at the time of the reckless driving incident. Since RCW 46.20.031(1) prohibits the DOL from issuing a driver's license to a person under the age of 16, Kirkpatrick could not have possessed a valid driver's license at the time. In light of this evidence, the certification from DOL was unnecessary, and its erroneous admission was harmless. Consequently, I concur with the majority's disposition of this case and affirm the Court of Appeals, albeit on different grounds.

¶33 SANDERS, J. (concurring) — I agree with Chief Justice Alexander's concurrence that certifying the nonexistence of a public record that is "intended to be used to establish a fact at trial [is] testimonial." Concurrence (Alexander, C.J.) at 890. Therefore admitting the certification as to the absence of a driver's license violated Nathan Kirkpatrick's right to confrontation. But Chief Justice Alexander ultimately finds this error harmless because of overwhelming untainted evidence. *Id.* at 892. I write separately to note the error was harmless only because it did not relate to a disputed element of the crime.

¶34 Error is harmless only when it does not involve relevant evidence properly presented to the jury. "[I]t is impossible for courts to contemplate the probabilities any

evidence may have upon the minds of the jurors." *State v. Robinson*, 24 Wn.2d 909, 917, 167 P.2d 986 (1946). The assumption a court "can determine what evidence or instruction influenced the jury's decision" is "a tacit admission that an appellate court is necessarily engaging in fact-finding." Dennis J. Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 Gonz. L. Rev. 277, 279 (1995-96). And we "have no right to trench upon the province of the jury upon questions of fact." *Jensen v. Shaw Show Case Co.*, 76 Wash. 419, 421, 136 P. 698 (1913); *see* Wash. Const. art. I, § 21; U.S. Const. amend. VI (guaranteeing trial by jury).

¶35 But "if the disputed evidence or instruction does not relate to a disputed issue, it is likely to be harmless. This factor is based on the rational assumption that such [evidence] should not have influenced jury deliberations." Sweeney, *supra*, at 304. Nathan Kirkpatrick admitted to a police officer he did not have a driver's license. Accordingly, while the evidence should not have been admitted because it was testimonial, the error was harmless because the issue was not in dispute.

I concur.