IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39021-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NICK BAGGARLEY, | ) | |
| | ) | |
| Appellant. | ) | |

BIRK, J.* — Nick Baggarley appeals from a conviction for first degree robbery, presenting two assignments of error.  He asserts, first, a violation of his right to jury unanimity under State v. Petrich, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), overruled in part on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).  Baggarley says the State needed to elect which of two items taken from the victim was the basis for the robbery charge.  Baggarley argues, second, that the trial court erred in imposing a $200 filing fee at sentencing, asserting this was error because he was indigent.  We conclude Baggarley's failure to raise either issue in the trial court precludes review under RAP 2.5(a)(3).  We affirm.

I.  Jury Unanimity

Review of the trial court proceedings shows the evidence supported that

_____

* The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).

Baggarley's party took both a t-shirt and a cell phone from Robert Bain, but the State asserted only that taking the t-shirt was the basis of the robbery charge.

Bain testified he arrived at the Sullivan Scoreboard, a bar, at perhaps 10:30 or 11:00 p.m. on June 27, 2020. He spoke with Justin Yapp about getting in line to play pool. Bain and Yapp exchanged shirts. As the bar began to close, Yapp requested that they return each other's shirts or that Bain pay $50 for the t-shirt he had received from Yapp. A physical altercation began, but bar staff brought it to an end. Bain indicated a friend of his arrived just then, and gave him a ride away from the bar. Bain later set out on foot for the Black Diamond pool hall. Bain received a call from a female caller and thought he recognized the caller as the person who had given him a ride earlier. He asked to be picked up and provided his location. Soon after, a car approached him. Bain observed a woman driving the vehicle. Four men exited the vehicle. Bain recognized one of them as Yapp and at trial identified Baggarley as another. Bain described their "demeanor" as "pound time."

Bain testified Yapp was the first hit him. One of the four choked him, and two took turns kicking and punching him. Bain testified Baggarley hit him and kicked him in the ribs. Bain estimated the beating lasted 10-15 minutes. They took the t-shirt Bain had received from Yapp, and left Bain's original shirt. After they had gone, Bain realized he

no longer had his cell phone.[1]  Bain reported the crime to the police.  The following morning, Bain used software to locate his phone, and at its location identified the vehicle, its driver, and some of the attackers.

The State called Scott Bonney, a detective with the Spokane County Sheriff's office.  Baggarley told Bonney that, while at Sullivan Scoreboard on the night of the incident, Bain had agreed to pay $50 for Yapp's t-shirt.  He said when they later confronted Bain he, Yapp, and two others got out of the vehicle.  Yapp demanded either the t-shirt or the money.  Baggarley said Yapp and Bain started fighting, and Bain started swinging at the others, so all four of them started hitting Bain.  Baggarley said he struck Bain "in the face a few times."  Baggarley said he took a cell phone that he found on the ground at the fight scene and thought was Yapp's.  Yapp denied the phone was his.  Baggarley said when he learned the phone did not belong to his friends, he concluded it must have been Bain's, and he said he "threw it outside."

Baggarley testified.  He denied seeing Bain at the Sullivan Scoreboard or witnessing the t-shirt exchange.  Baggarley testified he was already out in a vehicle at the time when Bain said the first altercation with Yapp occurred at the Sullivan Scoreboard.

---

[1] Bain additionally told police his wallet was missing.  Bain also said that during the assault, one of the four picked up his wireless headphones, but threw them on the ground.  Baggarley denied knowledge concerning any headphones.

He testified they "ended up" in the parking lot where the beating later occurred, and he did not recall anything noteworthy about anything being said about where they were going or any other plans. Baggarley testified he "had no idea what was going on." Baggarley said Yapp exited the vehicle and went up to Bain and they started fighting. Baggarley said Yapp "slipped and fell down," so he and the others exited the vehicle. Then Bain "came at us like he was fighting for his life." Baggarley testified after Bain approached him, he hit Bain in the face twice. Baggarley denied hitting Bain while anyone else was holding him, denied kicking him, and denied hitting him while he was on the ground. He testified he did not remember anybody removing Bain's t-shirt and he did not do so. Baggarley testified he found a cell phone on the ground and did not know "why [he] assumed it was one of [his] friends['] instead of" assuming it was Bain's. When it did not belong to any of them, Baggarley testified he gave it to another in their party and denied having anything else to do with that cell phone.

The State charged Baggarley with one count of first degree robbery as an actor or accomplice in unlawfully taking unspecified personal property from the person of Bain. The State also charged one count of second degree assault. In its opening statement, the State indicated the group had "taken the t-shirt off of [Bain's] body, thrown the other shirt back at him and left with his cell phone." In closing, before turning to the specific charged crimes, the State addressed accomplice liability. The State addressed the

4

evidence that "the defendant unlawfully took personal property from the person of" Bain. The State continued, "Let's start off, again, with Mr. Bain as far as theft, and it was the theft of that t-shirt." After describing the evidence that the five located Bain, the State continued, "They all piled on over a t-shirt. They took that t-shirt from him and they left. . . . Their intent that night was to take that t-shirt. They stole Mr. Bain's t-shirt that night." The State argued Baggarley was responsible for the taking of the t-shirt under accomplice liability principles.

In the defense's closing, Baggarley argued his interaction with Bain's cell phone without knowledge of whose it was indicated he was not a principal actor for purposes of accomplice liability. Generally, his defense was that Baggarley was not privy to a plan to accost Bain and take the t-shirt. In rebuttal, the State argued that it was not required to prove that Baggarley participated in planning the crime, because participating in committing the crime was sufficient for accomplice liability. Nevertheless, the State argued that the jury should find Baggarley's testimony that he had not known of a plan to recover the t-shirt not credible, and that there was circumstantial evidence Baggarley had known of the group's intentions to rob Bain. The State referred to Baggarley's picking up the cell phone as part of its argument concerning his credibility. The State argued reasonable behavior—impliedly, behavior consistent with not having knowledge of criminal intent—would be to ask whose phone he found. Instead, the State argued,

5

Baggarley's action of pocketing the phone to take it with the departing group was not

reasonable behavior. The State concluded this discussion by reminding the jury, "Ladies

and gentlemen, you are the sole judges of credibility." In summing up Baggarley's

liability as an accomplice, the State argued, "This is a case [where] your friends get out of

the car, you get out with them and you participate with your friends on a beat-down of

somebody and a shirt is taken . . . . This is a case where Mr. Baggarley is responsible as

an accomplice."

No party requested and the court did not provide a unanimity instruction. The jury

found Baggarley guilty of first degree robbery and second degree assault. The State

conceded for purposes of sentencing the assault conviction merged into the robbery

conviction. Baggarley argues on appeal that "the State presented evidence of two

possible acts—taking of a t-shirt and taking of a phone—that could support the robbery

charge but did not elect a particular act." Baggarley argues his right to jury unanimity

was violated. Baggarley does not dispute he did not raise this issue at trial.

RAP 2.5(a)(3) allows for consideration of an issue raised for the first time on

appeal if it concerns a manifest error affecting a constitutional right. To meet RAP

2.5(a)(3), an appellant must demonstrate "(1) the error is manifest, and (2) the error is

truly of constitutional dimension." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756

(2009). In other words, the appellant must "identify a constitutional error and show how

6

the alleged error actually affected the [appellant]'s rights." State v. Kirkman, 159 Wn.2d

918, 926-27, 155 P.3d 125 (2007). An error is "manifest" where it had " 'practical and

identifiable consequences in the trial of the case.' " State v. Powell, 166 Wn.2d 73, 84,

206 P.3d 321 (2009) (internal quotation marks omitted) (quoting State v. Kirkpatrick, 160

Wn.2d 873, 880, 161 P.3d 990 (2007)).

In witness examinations, opening statement, closing argument, and rebuttal, the

State at no time suggested Baggarley was guilty of robbery by taking the cell phone. In

opening, the State never explicitly argued that taking the cell phone established robbery,

but referred only to Bain's being deprived of his cell phone, which appeared to emphasize

that this meant he could not call for help. Rather, the State argued Baggarley was guilty

of robbery solely as an accomplice to taking the t-shirt. It referred to Baggarley's

interaction with the cell phone in its rebuttal only in response to the defense's argument

that that interaction disproved accomplice liability, and only as relevant to assessing

Baggarley's credibility. Because the exclusive focus of the robbery charge in trial court

proceedings was on the taking of the t-shirt, any error in failing to give a Petrich

instruction based on the cell phone evidence was not manifest under RAP 2.5(a)(3), and

we do not reach the issue.

## II. Filing Fee

Sentencing was held on June 17, 2022.  Baggarley did not argue and the court did not find he was indigent at that time.  The court's inquiry into Baggarley's financial circumstances was as follows:

> [THE COURT:]  Mr. Baggarley, how old are you?
>
> THE DEFENDANT:  I just turned 30.
>
> THE COURT:  Just turned 30.  Yes.  Remind me, sir, what kind of work have you done in the past?
>
> THE DEFENDANT:  I worked for Odom Corporation delivering beverages in stores.  And that was one of the reasons why I took this to trial was because I couldn't have a felony to work there.  That didn't work out, so I'm going back to my buddy's moving business once I'm done here is my plan, is to get a hold of him.

Before imposing any legal financial obligations, the court confirmed that Baggarley was working at the time of the incident.  The court ordered Baggarley to pay $800, consisting of the $500 crime victim penalty assessment, the $200 criminal filing fee, and the $100 DNA (deoxyribonucleic acid) collection fee.  In a later order of indigency entered July 6, 2022, the court authorized Baggarley to seek this appeal at public expense, finding he "lack[ed] sufficient funds to prosecute an appeal," but not otherwise specifying a basis for finding indigency.

On appeal, Baggarley asserts that it was error for the trial court to impose the $200 filing fee because "RCW 10.01.160(3) expressly prohibits courts from imposing discretionary costs on defendants indigent at the time of sentencing." See also RCW 36.18.020(2)(h) ("[T]his fee shall not be imposed on a defendant who is indigent as defined in RCW 10.01.160(3)."). Under RCW 10.01.160(3), a defendant is indigent if they meet the criteria specified in RCW 10.101.010(3)(a) through (c) (among other definitions). Baggarley points to no evidence and presents no argument that would support a conclusion that he was indigent under this statute at sentencing.

We conclude this issue is not reviewable in the circumstances of this case. As stated above, under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." A party may raise a claimed error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). It is not clear that Baggarley contends the $200 criminal filing fee amounts to a constitutional issue. But even if it would, "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). The record indicates Baggarley was employed and did not claim he was indigent at sentencing. He was granted leave to appeal at public expense because he lacked funds to prosecute this appeal, but the court entered no findings that would permit or suggest a conclusion of indigency as defined

9

No. 39021-7-III
*State v. Baggarley*

under RCW 10.01.160(3).  In the absence of a more developed record, we are unable to review Baggarley's claimed error.[2]

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Birk, J._

WE CONCUR:

_Lawrence-Berrey, A.C.J._          _Staab, J._

---

[2] Baggarley also does not assert that any new legislation concerning legal financial obligations affects his case.  See State v. Ellis, ___ Wn. App. 2d ___, 530 P.3d 1048, 1057 (2023); State v. Wemhoff, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022).